## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ESTATE OF SYDNEY GREEN,

*Plaintiff*,

v.

Case No. 24-cv-1910-ABA

HARTFORD LIFE & ACCIDENT
INSURANCE CO.,

*Defendant*[1]

## MEMORANDUM OPINION AND ORDER

Sidney Green, who had worked for Piedmont Airlines, Inc., died in a motorcycle accident in June 2019. His family sought payment on life insurance, and accidental death insurance, that Piedmont made available to its employees through an ERISA-governed plan administered by Defendant Hartford Life and Accident Insurance Company ("Hartford"). Hartford denied the claim because Piedmont stated, in response to an inquiry from Hartford, that Mr. Green's employment with Piedmont had been terminated the week before his death. Mr. Green's family did not believe he had been fired, and instead contended, based on communications with Piedmont and Mr. Green's union, that he had remained employed by Piedmont as of his death and thus covered by the policy at issue. Mr. Green's estate ("Plaintiff" or "the Estate") brought this case after Hartford denied the claim and the Estate's internal appeal.

This Court previously granted a motion by the Estate seeking an order to compel Hartford to produce its communications with Piedmont about the claim, during a

---

[1] The complaint and caption in this case spells Mr. Green's first name as "Sydney." That appears to have been an error; his name was Sidney Green. *See, e.g.*, ECF No. 21-1 at 6.

hearing on January 13, 2025.[2] Plaintiff has also sought an order to compel Piedmont to produce documents that the Estate has subpoenaed, *see* ECF No. 23-1 (subpoena), including about whether Mr. Green remained employed as of the date of his death, and the circumstances of his alleged termination. For the following reasons, that motion will be granted.

## BACKGROUND

Mr. Green worked for Piedmont Airlines, Inc., which is a subsidiary of the American Airlines Group. As an employee of Piedmont, he was a participant in an ERISA-governed employee welfare benefit plan sponsored by Piedmont (the "Plan") and administered by Hartford. The Plan included an accidental death benefit for "All Full-time Active Employees who are mechanics and related employees covered by a collective bargaining agreement dated August 24, 2013 who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees." ECF 18-3 at 15.

Mr. Green died in a motorcycle accident on June 1, 2019. His mother, Shunia Eaton, filed a claim for payment of the accidental death benefit under the Plan, which for Mr. Green—if he was eligible—was $75,000. When Hartford received the claim, it reached out to Piedmont to determine whether Mr. Green was covered by the Plan. A benefits administrator on behalf of Piedmont responded by email on June 19, 2023, stating, "The employee had the $75000 Basic and AD&D. He was terminated on 5/22/19 and died on 6/1/19. Is there a 30 day provision?" ECF No. 28-2 at 2. Piedmont

---

[2] Plaintiff's request was made in the form of Plaintiff's Motion to Extend Time for Discovery, ECF No. 13, and a status report filed by Plaintiff, ECF No. 17 ¶ 3.

also submitted a Proof of Death Form on June 22, 2023, limited to the basic life coverage, not accidental death coverage. ECF No. 29-1 at 7-8. That form does not appear to state that his employment had been terminated, but it did report that his "actual date last physically at work" was May 21, 2019. *Id.* at 7.

On June 21, 2023, apparently in reliance on the statement that Mr. Green had been "terminated on 5/22/19"—one week before his death—Hartford issued a written denial of the claim. ECF No. 28-3. The basis for denial, in pertinent part, was as follows:

> We have completed the review of the claim for benefits and have determined that the documentation submitted in support of the claim does not establish that Sidney Green was covered for Group Accidental Death Insurance benefits through Hartford Life and Accident Insurance Company, at the time of his death, because his benefits ended the day his employment was terminated.
>
> . . . We based our decision to deny your claim for benefits on Policy Language and all documents contained in the claim file, viewed as a whole, including the following specific information:
>
> 1. Employer's Proof of Death Claim Submission;
>
> 2. Email from a Representative of August Mack Environmental, Inc; and
>
> 3. Death Certificate from the State of Maryland;
>
> The Employer's Proof of Death Claim Submission completed by a Representative of the Policyholder indicates that Sidney Green's last day worked was May 22, 2019.
>
> An email from a Representative of the Policyholder confirmed that Sidney Green's employment was terminated on May 22, 2019.

*Id.* at 2, 4.

Ms. Eaton appealed the denial on August 5, 2023, writing as follows:

Thank you for all your help. I am writing to follow up on a Claim for Sidney Green, who worked for Piedmont Airlines until the day of his death on June 1, 2019.

Sidney Green was involved in a Motorcycle Accident on June 1, 2019. His last day of work at Piedmont Airlines was June 1, 2019, as the President of Piedmont Airlines and His Union 355 has already verified and clarified. Hartford Insurance Company has already paid $75,000.00 for the life portion of the Policy, and it has been placed in Sidney Green Regular Estate Account.

The Administrator for the Estate is Attorney JAY SHUSTER.

The Estate has yet to receive the Accidental Portion of the claim, in the amount of $75,000.00. The Estate[']s accounting report is being held up awaiting this disbursement.

All corrected necessary employment verification and Estate documentation for this claim has already been submitted, approved and can be viewed on your computer system.

ECF No. 21-1 at 4.

On December 14, 2023, Ms. Eaton wrote to Hartford again:

You explained that the letter I sent in for the appeal as your letter to me instructed, needed to say it is for an appeal.

There for I am resubmitting this letter for the 4th time with the word "APPEAL TO DENIAL" as you requested. In order for you to forward it to the Appeals department.

Again... Please note that Sidney Green last day on the job was June 1, 2019 he was never terminated from his employment. Piedmont Airlines has zero evidence of him being terminated.

There has been a full investigation by his union and by the President of Piedmont Airlines who also found no evidence of Sidney Green being terminated and signed off on that fact personally.

>       Please reconsider your denial personally to expedite this claim
>       which has taken over 3 years to be processed or if necessary
>       through the APPEAL PROCESS. I appreciate all your help.

ECF No. 21-1 at 6-7.

A representative of Hartford responded that same day (December 14, 2024), stating, "I apologize for any delay's [sic] with this getting over to our appeals team. I will be sure to follow up with Sean and make sure this is sent to our appeals department for review ASAP." ECF No. 21-1 at 8.

On January 22, 2024, despite the seeming acknowledgement that Ms. Eaton's earlier letters had not been forwarded to Hartford's "appeals team," *id.*, Hartford denied the appeal, claiming that Ms. Eaton's appeal had been filed too late:

>       Based upon our review, we have determined that Ms. Eaton's
>       December 14, 2023, email was submitted beyond appeal
>       deadline of September 8, 2023, and, because of its late
>       submission, cannot be considered. Therefore, the Estate did
>       not exhaust administrative remedies under the Policy and
>       ERISA by filing a timely appeal. The claim decision is final,
>       and the file is closed.

ECF No. 28-4 at 3.

On May 21, 2024, the Estate filed a complaint in the Circuit Court for Baltimore County, Maryland, contending that the Estate was entitled to the $75,000 accidental death insurance benefit. Hartford removed the case to this Court. ECF No. 1. Hartford filed an answer on July 8, taking the position that coverage was properly denied because Mr. Green's "coverage terminated when his employment with Piedmont ended on May 22, 2019. ECF No. 6 ¶ 2.

The Estate has sought discovery outside the administrative record to determine whether Piedmont had in fact terminated Mr. Green's employment before his death.

One source from which the Estate has sought information and documents is Piedmont itself. It issued a subpoena to Piedmont requesting the following:

> 1. Piedmont Rules for terminating an employee
> 2. Piedmont Rules for notifying the Union
> 3. State how the Union was notified, by whom and when
> 4. State how Sidney Green was terminated and by whom and for what reason
> 5. State how the Hartford AD&D insurance was notified, by whom and the authority of such person

ECF No. 23-1 at 2 (the "Piedmont Subpoena"). In other words, this was a subpoena that sought documents, and interrogatory answers, from Piedmont on those subjects.

A key reason the Estate seeks this information—and why it contends Hartford abused its discretion in denying the accidental death benefit coverage—is that Mr. Green was a member of Teamsters Local Union No. 355, and was covered by the collective bargaining agreement ("CBA") to which the Plan itself refers when it extends coverage to "mechanics and related employees covered by a collective bargaining agreement dated August 24, 2013," ECF No. 18-3 at 15. The Estate has filed excerpts from the CBA. ECF No. 21-2. The Estate contends the CBA "required Piedmont to notify the Union of its intended termination of [Mr. Green] and the Union would have the duty to contest that intention." ECF No. 21 at 4. The CBA does contain a grievance procedure in Article 19. *Id.* at 3-4. The Estate does not point to any particular provisions that require that Piedmont notify the union before a termination. In any event, the Estate's position is that unless Piedmont gave such notice, then Mr. Green cannot have been "terminated" in May 2019, and thus remained employed on the date of his death, June 1, 2019. *Id.*

In November, the Estate filed a motion contending that the administrative record that Hartford had produced was not complete, and specifically seeking to take discovery

from Hartford, and also from Piedmont, on the question of whether Plaintiff had actually been fired from Piedmont before his death. ECF No. 13. The Estate contended, "Plaintiffs mother does not believe he was fired and the information the Union has given, indicates it did not get information that Plaintiff had been fired (as required by the Collective Bargaining Agreement)." *Id*. at 1. Hartford opposed the motion. ECF No. 18. Hartford argued that because the Plan conferred discretion on Hartford "to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy," ECF No. 18-3 at 26, the Estate is not entitled to "extra-record discovery." ECF No. 18 at 6-8.

The Court held a motions hearing on January 13, 2025. ECF No. 25. The Court heard argument for approximately an hour, and then explained the legal standards for when discovery outside an administrative record is appropriate in the context of an ERISA abuse-of-discretion review of a denial of a claim for benefits, including under cases such as *Booth v. Wal–Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 340-44 (4th Cir. 2000), *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 788-89 (4th Cir. 1995), *Helton v. AT&T*, 709 F.3d 343, 352-56 (4th Cir. 2013), and *Garner v. Central States Health and Welfare Fund*, 31 F.4th. 854, 858-59 (4th Cir. 2022). The Court then held that Plaintiff was entitled to discovery in three categories—on (1) Piedmont's policies, if any, regarding the steps it must take, consistent with the CBA, to terminate an employee; (2) documents reflecting whether Green was terminated, how, and why; and (3) what steps Hartford or Piedmont took, if any, to determine the termination-related requirements in the CBA, and whether they were satisfied—at least to the extent such documents are (or were) in Hartford's possession, custody or control. That was because, among other things, such information may be relevant to "the

adequacy of the materials [Hartford] considered to make the decision and the degree to which they support it" and "whether the decision making process was reasoned and principled." *See Booth*, 201 F.3d at 342.

Plaintiff had filed its motion to compel with respect to Piedmont only a few days before the motions hearing, ECF No. 24 (Jan. 8, 2025), and so the Court deferred ruling on that motion until Hartford had an opportunity to respond, which Hartford did, ECF No. 28, and as to which Plaintiff filed a reply brief, ECF No. 29.[3] Thus, the question of whether Piedmont must produce documents that are responsive to the Piedmont Subpoena is now ripe.[4]

## DISCUSSION

Where a plaintiff contends that the administrator of an ERISA-governed benefit plan has wrongfully denied coverage, and where the plan confers discretion on the administrator—as the Plan at issue here does, ECF 18-3 at 26—courts review the plan administrator's decision "for reasonableness." The Fourth Circuit has identified eight factors courts should consider in making that determination:

---

[3] The Court also deferred ruling, at the time of the motions hearing, on whether Plaintiff is entitled to any depositions. That issue remains deferred; the Court is not convinced at this time that Plaintiff has shown an entitlement to depositions, in light of the additional burden that depositions, as opposed to document productions, entail.

[4] Piedmont has not entered an appearance in this case, or filed objections to the Piedmont Subpoena pursuant to Rule 45(d)(2)(B) or otherwise. There is some dispute in the record about whether Piedmont was effectively served with the Piedmont Subpoena. Regardless, the parties have presented to the Court whether the Piedmont is under any obligation to respond to the subpoena. As set forth below, the Court herein orders Plaintiff to serve the subpoena (or re-serve it, as the case may be) on Piedmont, along with this Memorandum Opinion and Order, and requires that Piedmont comply with the subpoena and this Order within 30 days of service/renewed service.

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43.

In general, the question whether an ERISA administrator, like Hartford here, has abused its discretion is made based on the record that was before the administrator at the time of its coverage determination. Even in cases challenging denials that are subject to *de novo* review, federal courts are limited in their ability to consider, and plaintiffs are limited in their ability to discover, evidence outside the administrative record. As the Fourth Circuit has held, "courts conducting *de novo* review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim." *Quesinberry v. Life Insurance Com. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993). The *Quesinberry* court then identified some "exceptional circumstances" that would permit consideration of evidence that was not presented to the administrator during the claims process, at least in the context of *de novo* review:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is

> concerned about impartiality; claims which would have been
> insurance contract claims prior to ERISA; and circumstances
> in which there is additional evidence that the claimant could
> not have presented in the administrative process.

*Id.* at 1027.

The proper scope of review, and discovery, is even more constrained in cases, as here, where the standard of review is abuse of discretion (not *de novo*). "Generally, consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion." *Helton*, 709 F.3d at 352. But some limited discovery outside the administrative record is appropriate in some circumstances, including in the context of abuse-of-discretion review. As the Fourth Circuit has explained, "a close[] review of our precedent demonstrates that we have taken a more nuanced approach to consideration of extrinsic evidence on deferential review, rather than embracing an absolute bar." *Id.* "In particular, in discussing what evidence may be considered, we generally have focused on whether evidence was known to the administrator when it rendered its decision, not whether it was part of the administrative record." *Id.*

In addition, under *Booth* abuse-of-discretion review, if "materials considered to make the decision" were not "adequate" to support a denial of coverage, that can itself constitute an abuse of discretion. *Garner*, 31 F.4th. at 858 (quoting *Booth*, 201 F.3d at 342). In other words, "If the district court is to conduct meaningful appellate review of a benefit determination, even under a deferential standard, the administrative record must document the decision-making process." *Bernstein*, 70 F.3d at 789. "If the evidence before the plan administrator is inadequate, the district court should remand the case to the administrator to receive additional evidence and to make a new

determination." *Id*. In *Garner*, for example, the Fourth Circuit concluded that the administrator had not "receive[d] from the plan those medical records *necessary to formulate an informed opinion*"—which meant the administrator had abused its discretion, requiring a remand of the claim back to the administrator for further review. 31 F.4th at 858 (emphasis added).

As explained above, the question whether the Estate here was entitled to accidental death coverage under the Plan turned on whether Mr. Green remained a "Full-time Active Employee" of Piedmont Airlines as on the date of his death, June 1, 2019. Hartford concluded he was not, based on the June 19, 2023 email from Piedmont (ECF No. 28-2 at 2) and the June 22, 2023 Proof of Death Form (ECF No. 29-1 at 7-8). Hartford has represented that it has produced all documents in its possession that bear on the question of whether Mr. Green remained employed by Piedmont at the time of the motorcycle accident. The Estate contends that Piedmont—Mr. Green's employer, and the sponsor of the Plan—should *also* be required to produce documents that bear on that issue. The Court agrees.

As explained during the January 13 hearing, evidence bearing on whether Mr. Green was actually fired from his employment at Piedmont before his death (and effectively so, in compliance with any applicable legal requirements, including pursuant to the CBA) is not only squarely relevant to the fundamental question of whether Mr. Green was a "Full-time Active Employee[]" of Piedmont as a mechanic or related employee, "covered by a collective bargaining agreement dated August 24, 2013 who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees." ECF 18-3 at 15. That question goes directly to the first two *Booth* factors: "(1) the language of the plan" and "(2) the

purposes and goals of the plan." 201 F.3d at 342. But the relevance goes beyond those factors. The question whether Piedmont had records that would show that Mr. Green was *not* effectively terminated also goes to "the adequacy of the materials" that Hartford "considered to make the decision and the degree to which they support it," *id*., in other words whether Hartford took sufficient steps to determine whether Mr. Green remained a "Full-time Active Employee[]" who was  "covered by a collective bargaining agreement dated August 24, 2013" as of June 1, 2019. ECF 18-3 at 15. For the same reasons, such documents could very well bear on "whether [Hartford's] decision making process was reasoned and principled." *Booth*, 201 F.3d at 342.

In deciding that Piedmont must produce this information, the Court has considered not only the limitations on discovery in ERISA appeals, but also the proportionality standard in Federal Rule of Civil Procedure 26(b)(1), and the additional consideration for third-party discovery under Rule 45 that a Plaintiff must show a "need for [the discovery]" specifically from a third party (here, Piedmont) as opposed to a party to the case. *See Virginia Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). The burden on Piedmont of producing the requested documents or information is minimal. It can easily compile and produce documents or information on whether it actually terminated Mr. Green's employment before his death, and whether it gave notice of the termination to the union (or, if not, explain why such notification is not required under the CBA, as Plaintiffs contend). And with respect to the "need" analysis under cases like *Virginia Department of Corrections*, the record already shows that Hartford does not possess such information or documents, and so the Estate has made the requisite "need" showing.

Part of what makes this case unusual, and this decision narrow, is that the coverage term on the face of the Plan expressly incorporates the CBA that the Estate contends Piedmont did not comply with. Accidental death coverage is available, under the Plan, to full-time Piedmont mechanics and related employees who are "covered by a collective bargaining agreement dated August 24, 2013." ECF 18-3 at 15. That is the CBA that the Estate contends establishes that Mr. Green was *not* effectively terminated and instead remained employed as of the date of his death—specifically, that there is no evidence that Piedmont actually terminated Mr. Green's employment, and that because (according to the Estate) the CBA required notice to the union, the (alleged) lack of notification to Teamsters Local Union No. 355 corroborates that Mr. Green's employment was *not* terminated. For these additional reasons, the Estate is entitled to documents and information from Piedmont on whether Mr. Green was terminated, whether the CBA required notification to the union, and whether the union was in fact notified.

Hartford contends that, if there was other information the Estate thought Hartford should consider during its internal appeals process, the Estate should have submitted it to Hartford during the appeals process. That is indeed the ordinary process. But here, the missing information was neither in the Estate's possession nor Hartford's, and the one person other than Piedmont who may have known the missing information, Mr. Green, is deceased. Moreover, Hartford was (1) refusing to consider additional information, or even to consider the substance of the Estate's internal appeal, based on the assertion that Ms. Eaton's December 14, 2023 email (ECF No. 21-1 at 6-7) "was submitted beyond appeal deadline of September 8, 2023," ECF No. 28-4 at 3, while simultaneously (2) apologizing to Ms. Eaton for Hartford's "delay's [sic] with this [her

August 2023 appeal] getting over to our appeals team" and only in December "mak[ing] sure this is sent to our appeals department for review ASAP." ECF No. 21-1 at 8. Given these additional apparent procedural errors on Hartford's part, the Court rejects Hartford's objection to the Piedmont Subpoena on timeliness grounds.

## CONCLUSION AND ORDER

For these reasons, the Estate's motion to compel Piedmont to respond to the Piedmont Subpoena is GRANTED. Within 14 days of this order, Plaintiff shall serve this Order on Piedmont. Within 30 days of service of this Order, Piedmont shall produce to Plaintiff any documents or information in its possession, custody or control that are responsive to the Piedmont Subpoena, including but not limited to (1) Piedmont's policies, if any, regarding the steps it must take, consistent with the CBA, to terminate an employee; (2) documents reflecting whether Green was terminated, how, and why; and (3) what steps Hartford or Piedmont took, if any, to determine the termination-related requirements in the CBA, and whether they were satisfied.

Date:  March 17, 2025                    _____/s/_____
                                         Adam B. Abelson
                                         United States District Judge