IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESTATE OF SYDNEY GREEN,
    *Plaintiff*,

v.

HARTFORD LIFE & ACCIDENT
INSURANCE CO.,
    *Defendant*[1]

Case No. 24-cv-1910-ABA

**MEMORANDUM OPINION**

Sidney Green, who had worked for Piedmont Airlines, Inc., died in a motorcycle accident on June 1, 2019. His family sought payment on a life insurance benefit plan and an accidental death and dismemberment plan, both of which Piedmont made available to its employees and both of which were administered by Defendant Hartford Life and Accident Insurance Company ("Hartford"). Hartford approved and paid the life insurance claim, but denied the accidental death benefit claim because Piedmont reported to Hartford that Mr. Green's employment with Piedmont had been terminated the week before his death. Mr. Green's estate ("Plaintiff" or "the Estate") brought this case, challenging Hartford's denial of the accidental death claim. The Estate and Hartford have each cross-moved for summary judgment. For the following reasons, Hartford did not abuse its discretion in denying the claim. Accordingly, Hartford's motion for summary judgment will be granted and the Estate's motion will be denied.

---

[1] The complaint and caption in this case spells Mr. Green's first name as "Sydney." That appears to have been an error; his name was Sidney Green. *See, e.g.*, ECF No. 21-1 at 6.

1

I.    **BACKGROUND**

In ERISA cases, where, as here, a plaintiff challenges an ERISA administrator's denial of a claim for benefits, the question of whether the administrator abused its discretion is generally adjudicated based on the "existing administrative record, rather than on any testimony or other additional evidence obtained outside the administrative record." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010). This Court previously explained that there can be exceptions to that rule, including in the context of abuse-of-discretion review. *See Estate of Green v. Hartford Life & Accident Ins. Co.*, Case No. 24-CV-1910-ABA, 2025 WL 834068, at *5 (D. Md. Mar. 17, 2025). But the basic foundation for an abuse-of-discretion review is the administrative record. Accordingly, the Court first sets forth herein the evidence in the administrative record, which has been filed at ECF Nos. 43 & 56-1, and which includes the applicable policy (SGREEN POL 00001 to -51).[2] Moreover, although the Court has reviewed the other evidence that the parties have submitted and summarizes it in section I.D, as explained below none of that evidence would alter the Court's conclusion that there was no abuse of discretion.

A.    **The policy**

Mr. Green worked for Piedmont Airlines, Inc., which is affiliated with American Airlines. As an employee of Piedmont, he was a participant in an ERISA-governed employee welfare benefit plan sponsored by Piedmont (the "Plan") and administered by

---

[2] The administrative record bears Bates numbers SGREEN00001 to -141 and SGREEN POL 00001 to -51. SGREEN00001 through -59 pertain to the ADD claim; SGREEN00060 to -141 pertain to the life insurance claim. Because the administrative record was filed under seal, the Court will refer to the administrative record citations by Bates number rather than ECF page numbers.

Hartford. SGREEN POL 00001 to -51. The Plan included an accidental death ("ADD") benefit for "All Full-time Active Employees who are mechanics and related employees covered by a collective bargaining agreement dated August 24, 2013 who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees." SGREEN POL 000015 (*see also* ECF 18-3 at 15). The Plan provides that the ADD benefit will be paid if a covered individual is involved in an accident that "occurs while . . . covered under this benefit." *Id*. SGREEN POL 000019. The Plan provides ADD benefits up to $75,000, depending on the type of loss experienced. SGREEN POL 000015, -19. The Plan also provides a life insurance benefit, in the amount of $75,000, if a covered individual "die[s] while covered under The Policy." SGREEN POL 000019.

Coverage under the Plan ends, among other reasons, on "the date Your Employer terminates Your employment." SGREEN POL 000016. With respect to life insurance coverage, however, eligibility extends an additional 31 days past "the date coverage terminates." SGREEN POL 000022 ("We will pay Your Amount of Life Insurance You would have had the right to apply for under this provision if: 1) coverage under The Policy terminates; and 2) You die within 31 days of the date coverage terminates; and 3) We receive Proof of Loss."). That extended coverage, however, did not apply to the ADD benefit; where an employee's employment was terminated, for example, ADD benefit coverage ended on the date of termination. *See id.* (limiting the 31-day extension provision to the "Life Insurance" coverage).

Piedmont delegated discretionary authority to Hartford to decide claims and determine eligibility for benefits. SGREEN POL 000029 ("The Plan has designated and named [Hartford] as the claims fiduciary for benefits provided under the Policy. The

Plan has granted [Hartford] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.").

### B.     The facts set forth in the administrative record

Mr. Green died in a motorcycle accident on June 1, 2019. SGREEN 000010 (case file notes), -58 (death certificate), -39 (letter from Ms. Eaton).[3] Piedmont submitted a claim on Mr. Green's behalf under the life insurance coverage of the Plan, which Hartford received on June 2, 2023. SGREEN 000124–141. That claim stated that although Mr. Green's "actual date last physically at work" was May 22, 2019, Mr. Green had died on June 1, 2019, and identified Mr. Green as eligible for the $75,000 life insurance coverage. SGREEN 000137. Hartford approved that claim because although Mr. Green's employment had ended before his death, his estate remained eligible for the life insurance benefit because, as stated above, that coverage under the Piedmont Plan remained in effect for 31 days after Mr. Green's employment ended. SGREEN 000065 (notice on July 20, 2023 stating, "[T]he life insurance claim for Sidney Green is approved for payment. . . . Your payment is in the mail.").

Separately, on June 15 or 16, 2023, Mr. Green's mother, Shunia Eaton, submitted a claim for payment of the accidental death benefit under the Plan, which for Mr. Green—if he was eligible—was also $75,000. SGREEN 00048 (June 16, 2023 email from Hartford claim processor stating, "I received an Accidental Death claim for Mr. Sidney Green today"); *see also* SGREEN 000059 (June 15, 2023 internal Hartford email requesting to "set up an ADD claim for Sidney Green"). When Hartford received the claim, it reached out to Piedmont to determine whether Mr. Green was covered by the

---

[3] Pages 57 and 58 of the administrative record are the death certificate for Mr. Green. Legible versions of those pages appear at ECF No. 56-1.

4

ADD provisions of the Plan. SGREEN 000048 ("Can you please confirm you agree with a Basic AD&D benefit amount of $75k? Can you please confirm the reason for the gap between the Date Last Worked of 5/22/2019 and the Date of Death of 6/1/2019?"). A benefits administrator on behalf of Piedmont responded by email on June 19, 2023, stating, "The employee had the $75000 Basic and AD&D. He was terminated on 5/22/19 and died on 6/1/19. Is there a 30 day provision?" *Id.* (*see also* ECF No. 28-2 at 2). The inquiry about a "30 day provision" referred to the conversion provision discussed above, pursuant to which the life insurance coverage (but not the accidental death coverage) extended for a period past the end of employment. *See* SGREEN POL 000022 (quoted and discussed above).

On June 21, 2023, in reliance on the statement that Mr. Green had been "terminated on 5/22/19" (SGREEN 000048)—one week before his death—Hartford issued a written denial of the ADD claim. SGREEN 000042–46 (*see also* ECF No. 28-3). The basis for denial, in pertinent part, was as follows:

> We have completed the review of the claim for benefits and have determined that the documentation submitted in support of the claim does not establish that Sidney Green was covered for Group Accidental Death Insurance benefits through Hartford Life and Accident Insurance Company, at the time of his death, because his benefits ended the day his employment was terminated.
>
> . . . We based our decision to deny your claim for benefits on Policy Language and all documents contained in the claim file, viewed as a whole, including the following specific information:
>
> 1. Employer's Proof of Death Claim Submission;
>
> 2. Email from a Representative of August Mack Environmental, Inc; and

5

> 3. Death Certificate from the State of Maryland;
>
> The Employer's Proof of Death Claim Submission completed by a Representative of the Policyholder indicates that Sidney Green's last day worked was May 22, 2019.
>
> An email from a Representative of the Policyholder confirmed that Sidney Green's employment was terminated on May 22, 2019.

SGREEN 000042, -44.

In a section titled "**How do I appeal?**" the Denial Letter informed Plaintiff of the right to appeal Hartford's determination and provided a mailing address or fax number for submitting an appeal. SGREEN 00044–45. It stated that Plaintiff had "until September 8, 2023, to send [Hartford its] written appeal request." *Id.* at 45.

No appeal was received by September 8, 2023. The next correspondence Hartford received about this claim was a letter from Ms. Eaton, which Hartford received by fax on November 16, 2023. SGREEN 000039.[4] That letter, entitled "**APPEAL TO DENIAL**," stated as follows:

> Thank you for all your help. I am writing to follow up on a Claim for Sidney Green, who worked for Piedmont Airlines until the day of his death on June 1, 2019.
>
> Sidney Green was involved in a Motorcycle Accident on June 1, 2019. His last day of work at Piedmont Airlines was June 1, 2019, as the President of Piedmont Airlines and His Union 355 has already verified and clarified. Hartford Insurance Company has already paid $75,000.00 for the life portion of the Policy, and it has been placed in Sidney Green Regular Estate Account.
>
> The Administrator for the Estate is Attorney JAY SHUSTER.

---

[4] The Estate contends that an appeal was submitted earlier. That dispute and the evidence related to it are discussed below.

6

> The Estate has yet to receive the Accidental Portion of the claim, in the amount of $75,000.00. The Estate[']s accounting report is being held up awaiting this disbursement.
>
> All corrected necessary employment verification and Estate documentation for this claim has already been submitted, approved and can be viewed on your computer system.

SGREEN 000038 (*see also* ECF No. 21-1 at 4).

On December 14, 2023, Ms. Eaton called Hartford and asked why the ADD claim had been denied when the life insurance claim had been paid, and also contended that Mr. Green "wasn't terminated." SGREEN 000012. She also stated that she "would [like] corrections made instead of going through the appeal process," but also contended that her November 17 letter was her appeal. *Id.* Later that day, Ms. Eaton wrote to Hartford again:

> You explained that the letter I sent in for the appeal as your letter to me instructed, needed to say it is for an appeal.
>
> There for I am resubmitting this letter for the 4th time with the word "APPEAL TO DENIAL" as you requested. In order for you to forward it to the Appeals department.
>
> Again… Please note that Sidney Green last day on the job was June 1, 2019 he was never terminated from his employment. Piedmont Airlines has zero evidence of him being terminated.
>
> There has been a full investigation by his union and by the President of Piedmont Airlines who also found no evidence of Sidney Green being terminated and signed off on that fact personally.
>
> Please reconsider your denial personally to expedite this claim which has taken over 3 years to be processed or if necessary through the APPEAL PROCESS. I appreciate all your help.

SGREEN 000037 (*see also* ECF No. 21-1 at 6–7).

7

A representative of Hartford responded that same day (December 14, 2024), stating, "I apologize for any delay's [sic] with this getting over to our appeals team. I will be sure to follow up with Sean and make sure this is sent to our appeals department for review ASAP." SGREEN 000033 (*see also* ECF No. 21-1 at 8).

To the extent Ms. Eaton's December 14 letter constituted an appeal of the ADD denial, on January 22, 2024, Hartford denied the appeal, based on the position that any appeal had been filed too late:

> Based upon our review, we have determined that Ms. Eaton's December 14, 2023, email was submitted beyond appeal deadline of September 8, 2023, and, because of its late submission, cannot be considered. Therefore, the Estate did not exhaust administrative remedies under the Policy and ERISA by filing a timely appeal. The claim decision is final, and the file is closed.

SGREEN 000001–2 (*see also* ECF No. 28-4 at 3).

Although the letter to Ms. Eaton stated that the appeal was denied solely on failure-to-exhaust grounds, Hartford's internal claim notes indicate that the appeals specialist also considered the substantive merits of the appeal, including noting that Mr. Green's last reported date of work (May 22, 2019) was earlier than the date of death (June 1, 2019); that Piedmont had advised that the employee was terminated from employment on May 22, 2019; that "no additional information [has been] submitted on appeal to support the claim that the deceased was covered on the date of his death"; and thus "his coverage would have terminated on that date, and there is no option for Convers[ion] of Accidental Death Benefits." SGREEN 000009–11.

8

### C. Procedural history

On May 21, 2024, the Estate filed a complaint in the Circuit Court for Baltimore County, Maryland, contending that the Estate was entitled to the $75,000 accidental death insurance benefit. Hartford removed the case to this Court. ECF No. 1. Hartford filed an answer on July 8, taking the position that coverage was properly denied because Mr. Green's "coverage terminated when his employment with Piedmont ended on May 22, 2019." ECF No. 6 ¶ 2.

The Estate then sought discovery outside the administrative record to determine whether Piedmont had in fact terminated Mr. Green's employment before his death. Without deciding whether the Court would consider such extra-record evidence in deciding whether Hartford abused its discretion in denying the claim, the Court held a hearing, ECF No. 25, and permitted limited discovery, specifically "(1) Piedmont's policies, if any, regarding the steps it must take, consistent with the [collective bargaining agreement that is referenced in the Plan], to terminate an employee; (2) documents reflecting whether Green was terminated, how, and why; and (3) what steps Hartford or Piedmont took, if any, to determine the termination-related requirements in the [Collective Bargaining Agreement], and whether they were satisfied—at least to the extent such documents are (or were) in Hartford's possession, custody or control." *Estate of Green*, 2025 WL 834068, at *4. The Court permitted discovery of such evidence insofar as it was relevant to "the adequacy of the materials [Hartford] considered to make the decision and the degree to which they support it" and "whether the decision making process was reasoned and principled." *See Booth v. Wal–Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000).

9

Since then, the parties have filed cross-motions for summary judgment. The Estate's motion is one page long, and offers a single basis for the motion: that Piedmont "has not responded to the Subpeona [*sic*]," which the Estate contends "leav[es] Defendant [Hartford] with insufficient evidence that the Decedent had been terminated." ECF No. 39. Hartford filed a cross-motion for summary judgment, explaining in detail why, based on the information available to it at the time of the claim, it did not abuse its discretion in denying the ADD claim, both because the appeal was untimely and because Piedmont had represented that Mr. Green's employment had been terminated before his death. ECF No. 44-1. The Estate filed further responses or replies, ECF Nos. 46, 47, and a surreply without seeking leave to do so, ECF No. 49. Hartford filed a reply brief, ECF No. 48, and a motion to strike the Estate's surreply, ECF No. 50, to which the Estate responded, ECF No. 51.

### D. The extra-record evidence

There is one document that does not appear in the administrative record and that the Estate wishes the Court to consider in deciding whether Hartford abused its discretion: excerpts from the collective bargaining agreement (CBA) between Piedmont Airlines and Fleet and Passenger Service Employees, for the period November 5, 2018 through November 4, 2023. ECF No. 21-2. Plaintiff contends the CBA "required Piedmont to notify the Union of its intended termination of the living Defendant and the Union would have the duty to contest that intention." ECF No. 21 at 4. Plaintiff contends that Piedmont did not produce documents in response to Plaintiff's subpoena or this Court's order granting Plaintiff's motion to compel. ECF No. 35 (order); ECF No. 39 (Estate contending that "Piedmont Airlines has not responded to the Subpeona [sic] and "[t]herefore, the Court's Order was not followed by Piedmont, leaving Defendant with

10

insufficient evidence that the Decedent had been terminated"). The Estate urges the Court to infer from the CBA notice provisions, and the absence of documents produced by Piedmont, that Mr. Green was not actually terminated from Piedmont's employment on May 22, 2023, as Piedmont represented to Hartford at the time.

Hartford maintains that any consideration of extra-record evidence would be improper, but in any event has submitted a declaration from Piedmont rebutting the inference that Plaintiff urges. The declaration states that Piedmont's human resource recordkeeping system (Workday) and a prior recordkeeping system (ABRA) "reflect that Mr. Green worked for American Eagle [Piedmont's d/b/a name] starting September 6, 2016, and his employment ended by termination on May 22, 2019," and that his employment "was involuntarily terminated for violating TSA policies." ECF No. 48-1. In response, the Estate questions "why Piedmont did not follow its [alleged] contractual responsibility to notify the Union." ECF No. 49 at 1–2.

## II.   DISCUSSION

Where a plaintiff contends that the administrator of an ERISA-governed benefit plan has wrongfully denied coverage, and where the plan confers discretion on the administrator—as the Plan at issue here does, ECF 18-3 at 26—courts review the plan administrator's decision "for reasonableness." *Booth*, 201 F.3d at 343. In making that determination, the starting point is "the language of the plan." *Id.* at 342. The Fourth Circuit has instructed courts to also consider "(2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was

consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Id.* at 342–43.

Here, the Estate has not shown that Hartford abused its discretion in denying the Estate's claim for ADD benefits, for two reasons: the Estate and Mr. Green's family did not timely exhaust Hartford's internal appeal procedures as required by the Plan, and the denial was adequately supported by the evidence presented to Hartford at the time of the denial.

### A. The Estate failed to file a timely internal appeal

"An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). In other words, exhaustion of internal remedies, when required by the terms of a plan, is "a prerequisite to an ERISA action for denial of benefits." *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989).

Here, the Plan required that when the plan administrator (Hartford) denies a claim for benefits, the beneficiary (or, as applicable here, a representative of the beneficiary's estate) must file a "written application" within either 60 or 180 days (here, 180 days) of the administrator's written notice of the denial:

> On any claim, the claimant or his or her representative may appeal to Us for a full and fair review. To do so, he or she:
> 1) must request a review upon written application within:
> > a) 180 days of receipt of claim denial if the claim requires Us to make a determination of disability; or

> b) 60 days of receipt of claim denial if the claim does not require Us to make a determination of disability; and
>
> 2) may request copies of all documents, records, and other information relevant to the claim; and
>
> 3) may submit written comments, documents, records and other information relating to the claim.
>
> We will respond in writing with Our final decision on the claim.

SGREEN POL 000026.

As noted above, Ms. Eaton submitted the application for ADD benefits on June 15 or 16, 2023. SGREEN 00048, -59. Hartford denied the claim on June 21, 2023, based on the employment termination date that Piedmont had provided to Hartford and the death certificate, which taken together reflected that Mr. Green was no longer employed by Piedmont at the time of his death. SGREEN 000042–46 (*see also* ECF No. 28-3). The June 21 written notification of denial informed Ms. Eaton of the appeal procedures required under the Plan. In a section titled "**How do I appeal?**" the denial letter informed Ms. Eaton and the Estate of their right to appeal the denial, provided a mailing address or fax number for submitting an appeal, and stated that any "written appeal request" must be sent to Hartford by September 8, 2023. SGREEN 00044–45.

The administrative record reflects that the first time Hartford received any written appeal was November 16, 2023. SGREEN 000039. The appeal letter bears a written date of August 5, 2023. *Id.* But the letter was sent by fax, and the fax transmission header reflects that Hartford received it on November 16, 2023 at 9:36 p.m. *Id.* There is no genuine dispute that a letter sent on November 16, 2023 was untimely under both the unambiguous language of the Plan (SGREEN POL 000026) and the calculation of the 180-day deadline in the denial letter (SGREEN 00045).

The Estate here insists that the appeal was "timely" and asserts that Hartford "admits" that the appeal letter was timely. ECF No. 49 ¶ 1. It appears the Estate's position is one or more of the following.

First, the Estate may be alluding to a notation in the administrative record reflecting that in February 2024, counsel for the Estate "advised" Hartford that "his client filed an appeal on 8/5/23" and that the reason Hartford did not receive it "may have been a post office problem, or a problem in Hartford's office as to when it was received." SGREEN 000005. But that communication occurred long after the appeal deadline, and there is no evidence in the record of a "post office problem."

Second, the Estate may be pointing to a statement by Ms. Eaton in an email on December 14, 2023, that she was submitting an appeal "for the 4th time," implying that prior to the faxed version on December 14 she had attempted to send the letter twice before. SGREEN 000031. The Court has no reason to doubt that Ms. Eaton had attempted to submit an appeal prior to December 14, but nothing in the administrative record reflects that Hartford received any appeal prior to the September 18 deadline, or that Ms. Eaton or anyone else on behalf of the Estate followed up with Hartford before the September 18 deadline to confirm whether it had received an appeal.

Third, the Estate has pointed to an email on December 14, 2023 from Joshua Ferreira, a Hartford representative, in which after Ms. Eaton attached her appeal letter (the one she contended she was "resubmitting . . . for the 4th time"), Mr. Ferreira states, "Thank you for your appeal. I apologize for any delay's [sic] with this getting over to our appeals team. I will be sure to follow up with Sean and make sure this is sent to our appeals department for review ASAP." SGREEN 000031–33. The Estate considers this an admission by Hartford that the absence of a record of Hartford having received an

14

appeal before the September 18 deadline was Hartford's fault, not the Estate's. But the apology by Mr. Ferreira does not bear the evidentiary weight the Estate asks it to carry. In context, the email simply reflects an offer by Mr. Ferreira to ensure that the version of the letter submitted by Ms. Eaton on December 14 would be passed along to Hartford's appeals department.

In short, there is no evidence in the record—either within the administrative record or in the form of extra-record evidence—that Ms. Eaton or anyone else on behalf of the Estate submitted a written appeal to Hartford at any time earlier than November 16. Hartford accuses Ms. Eaton of "backdat[ing]" the letter, because the November 16 fax contains the written date of August 5. ECF No. 44 at 10. The Court need not and does not decide whether the letter was "backdated" in any sense other than the fact that it purports to have been *written* on August 5. But it is immaterial when the letter was written; the material question is when it was submitted to Hartford. And the only evidence in the record reflects that it was not submitted until November 16, 2023, and then resubmitted on December 14, 2023. This conclusion is further confirmed by a notation by a Hartford claims representative on December 13, 2023, that Ms. Eaton had called that day to verify ("vrfy") that Hartford had received her "letter on 11/17," which "she states is the Appeal." SGREEN 000012. Accordingly, the Estate failed to timely exhaust internal appeals as required by the Plan, and thus Hartford is entitled to summary judgment on that basis.

**B.     Hartford did not abuse its discretion in denying the claim**

For the reasons stated above, Hartford was entitled to deny the claim based on the untimeliness of the appeal. But even if the Estate had timely appealed, Hartford did not abuse its discretion in denying the Estate's claim for benefits under the ADD policy.

15

The Piedmont plan confers on Hartford as the claims administrator "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." SGREEN POL 000029; *see also* SGREEN POL 000026 ("[Hartford] ha[s] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy."). When a benefit plan confers such discretionary authority and a beneficiary files a lawsuit challenging a claim denial, a court reviews such denial for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Geiger v. Zurich Am. Ins. Co.*, 72 F.4th 32, 37 (4th Cir. 2023). "Under the abuse-of-discretion standard, [courts] will not disturb a plan administrator's decision if the decision is reasonable, even if [the court] would have come to a contrary conclusion independently." *Williams*, 609 F.3d at 630.

Here, there is no dispute that the Plan provided ADD benefits only for individuals who were active employees of Piedmont at the time of the event giving rise to the claim, SGREEN POL 000015 (*see also* ECF 18-3 at 15), and that the 30-day conversion period applied only to life insurance claims, not ADD claims. There is also no dispute about the date of Mr. Green's death: June 1, 2019. The thrust of the Estate's challenge to the ADD benefit denial is that the evidentiary record did not support Hartford's conclusion that Piedmont had terminated Mr. Green's employment prior to his death.

When a beneficiary challenges an ERISA-governed benefit denial that is subject to abuse-of-discretion review on the basis that the denial was unsupported by evidence, courts look principally to whether such factual determination was supported by "substantial evidence," meaning "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228,

16

238 (4th Cir. 2022) (quoting *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). Or as the Fourth Circuit put it in *Booth*, the inquiry focuses on "the adequacy of the materials considered to make the decision and the degree to which they support it." *Booth*, 201 F.3d at 342–43.

Here, there was clearly an adequate evidentiary basis for Hartford's conclusion that Mr. Green was no longer employed by Piedmont at the time of his death. After Mr. Green's death, Piedmont submitted a claim to Hartford to facilitate payment of the life insurance benefit that was owed to Mr. Green's estate, given that the life insurance benefit (unlike the ADD benefit) extended a month past the end of his employment. When Hartford received a separate claim for benefits, from Ms. Eaton, under the ADD policy, it noted that Mr. Green's "Date Last Worked" according to Piedmont was May 22, 2019, which preceded Mr. Green's date of death, June 1. SGREEN 000048. A benefits administrator at American Airlines (with which Piedmont is affiliated) responded, "The employee had the $75000 Basic and AD&D. He was terminated on 5/22/19 and died on 6/1/19. Is there a 30 day provision?" *Id.* Thus, Mr. Green's employer confirmed that Mr. Green was no longer employed by Piedmont on the date of his death. The employer's representative also asked about a "30 day provision," which in context appears to have been an inquiry to ensure that, if there had been a 30-day conversion period under the ADD policy, Hartford would pay out the ADD benefit given that Mr. Green died within 30 days of the last date of his employment. Thus, that inquiry constituted further confirmation by Mr. Green's former employer that his employment had been terminated prior to his death; otherwise there would have been no reason to inquire about a conversion period. But the ADD policy does not have a 30-

17

day conversion period, and so the answer to the American Airlines benefits administrator's question was "no."

Hartford cites various cases that support the notion that, when it comes to factual information that an employer should have, it is generally reasonable for an ERISA benefit administrator to rely on that information. In *Mayer v. Ringler Assocs. Inc.*, for example, the plan administrator "reasonably relied" on information from the plan sponsor (the employer) regarding plan enrollment and premium payments, "[b]ecause the Employer determines employee eligibility and enrollment and is responsible for keeping documentation related to eligibility and enrollment." 9 F.4th 78, 90 (2d Cir. 2021). That information from the employer constituted "substantial evidence" on that issue. *Id.*; *see also, e.g.*, *Niebauer v. Crane & Co.*, 783 F.3d 914, 925 (1st Cir. 2015) (holding that it was "entirely appropriate" for the claims administrator to "rely on materials submitted by" the plaintiff's employer when determining eligibility for benefits); *Normil v. Colonial Life and Accident Ins. Co.*, 403 F. Supp. 2d 1159, 1166–67 (S.D. Fla. 2005) (holding that the life insurance administrator was "not wrong . . . to rely on information supplied to [it] by a Piccadilly executive in making a determination as to whether Decedent remained in active employment and was therefore eligible for coverage at the time of his death").

For these reasons, the administrative record reflects that Hartford had a sufficient evidentiary basis—*i.e.*, "substantial evidence," *Wilson*, 27 F.4th at 238—for its conclusion that Mr. Green's employment was terminated prior to his death. Accordingly, his estate was ineligible for payment of benefits under Piedmont's ADD policy.

In general, courts apply the "substantial evidence" test to the administrative record, *i.e.* whether there is substantial evidence *in the administrative record* to support

18

the denial. Here, as noted above, the Estate sought to expand the record for this Court's review beyond the administrative record. ECF Nos. 13, 21, 24. The Court granted that request, in part, because there are narrow circumstances in which, even on abuse-of-discretion review, a court may consider evidence outside the administrative record, such as to determine the impact of an administrator's conflict of interest on a benefits determination, or to determine whether the administrator's collection of records was adequate to "formulate an informed opinion." *Estate of Green*, 2025 WL 834068, at *4 (quoting *Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 858 (4th Cir. 2022)). But here, the Estate has come forward with no evidence that would render unreasonable Hartford's reliance on Piedmont's representation to Hartford that Mr. Green's employment had been terminated on May 22, 2019. If anything, the extra-record evidence not only confirms that Piedmont fired Mr. Green on that date, but reveals that it was an involuntary termination because Mr. Green had violated TSA policies. ECF No. 48-1 at 4. And insofar as the Estate has contended that any termination was ineffective or unlawful because Mr. Green's union was not notified of the termination, *see, e.g.*, ECF No. 21 at 4, the Estate has not come forward with any evidence (as opposed to allegations) to suggest that even if the collective bargaining agreement required notice, and even if notice was not provided, that such lack of notice would have rendered ineffective Mr. Green's termination.

   Finally, the Court granted the Estate's motion to compel Piedmont's production of documents and apparently Piedmont did not produce documents. Presumably that was because insofar as the subpoena (ECF No. 24-1) requested documents that fell within this Court's order granting the motion to compel (ECF No. 35 at 14) there were none responsive to the very specific requests at issue. And Piedmont did provide

19

information that is now in the record of this Court, confirming the termination and the reason for it. ECF No. 48-1 at 4. The Estate has thus pivoted to an argument that the absence of *additional* documentation related to Mr. Green's termination should not only preclude summary judgment for Hartford but entitle the Estate to summary judgment. ECF No. 39. But insofar as the Estate is arguing that the Court should essentially grant an adverse inference against Hartford on that basis, the Estate has identified no authority for doing so. Here, there was substantial evidence supporting the denial of the Estate's ADD claim. And if there was evidence the Estate wanted Hartford to consider in connection with the ADD claim, it was the Estate's obligation to bring forward such evidence during the claim review process, and to file an appeal before the deadline.

For these reasons, even if the Estate had timely appealed the claim denial (which it did not), Hartford did not abuse its discretion in concluding that the Estate had no entitlement to ADD benefits because Mr. Green was not employed by Piedmont at the time of his death.

## CONCLUSION

Hartford did not abuse its discretion in denying the Estate's claim for benefits under the Piedmont Accidental Death and Dismemberment policy. Accordingly, Hartford's motion for summary judgment will be granted, and the Estate's motion for summary judgment will be denied. A separate order follows.

Date:  October 23, 2025                           /s/
                                                  Adam B. Abelson
                                                  United States District Judge